UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| The Estate of ZELJKO DOJCINOVIC, by its Personal Representative DANES DOJCINOVIC et al., <br><br> Plaintiffs, <br><br> v. <br><br> ACE PROPERTY AND CASUALTY INSURANCE COMPANY et al., <br><br> Defendants. | Case No. 21-11928 <br> Honorable Laurie J. Michelson |

**OPINION AND ORDER GRANTING ACE'S MOTION FOR SUMMARY JUDGMENT [31]**

Zeljko and Asima Dojcinovic were killed in an automobile accident after their freightliner tractor was hit by two vehicles that were street racing. At the time of the accident, the Dojcinovics were driving the freightliner for Elvis' Services Inc., a motor carrier that had an automobile insurance policy with ACE Property and Casualty Insurance Company. The freightliner was owned by Zeljko but leased to Elvis via an independent contractor operating agreement. Plaintiffs, the Estates of the Dojcinovics, filed this suit for negligence against the drivers and owner of the vehicles that caused the accident. They also sought uninsured/underinsured motorist coverage from ACE and several other insurers.

In time, ACE moved for summary judgment, arguing, among other things, that Plaintiffs were not entitled to uninsured/underinsured motorist benefits under the ACE policy because the freightliner was not a "covered auto." (ECF No. 31,

PageID.479.) Given the adequate briefing and record, the Court considers the motion without further argument. *See* E.D. Mich. LR 7.1(f). For the reasons that follow, the Court will grant ACE's motion.

## I. Background

As this case primarily involves interpretation of an insurance contract, the record is sparse. However, there are a few factual details relevant to the issues before the Court.

Asima and Zeljko Dojcinovic were Michigan residents and both self-employed commercial truck drivers. Zeljko owned a company named Dark & Z Corporation as well as a freightliner tractor. (ECF No. 31-8, PageID.595; ECF No. 33-1, PageID.795.) On September 6, 2018, Dark & Z entered into an independent contractor operating agreement with Elvis' Services Inc., a federally registered motor carrier based in Fort Wayne, Indiana. (ECF No. 31-3, Page ID.567; ECF No. 31-4, PageID.573.) As a motor carrier, Elvis' Services transports goods via semi-trucks and freightliners—some semi-trucks and freightliners Elvis itself owns, and others it leases, sometimes along with driving services, from independent contractors who own the vehicles.[1] Under the parties' agreement, Dark & Z leased Zeljko's freightliner to Elvis and also agreed to

---

[1] Such independent contractor arrangements appear to be common in the trucking industry. "Federal regulations governing motor carriers require carriers to either own their trucking equipment or to enter into written leases in which the 'owner' of the equipment 'grants the use of equipment, with or without driver, for a specified period . . . for use in the regulated transportation of property, in exchange for compensation.'" *Clarendon Nat'l Ins. Co. v. Medina*, 645 F.3d 928, 931 (7th Cir. 2011) (internal citations omitted); *see also* 49 C.F.R. § 376.12 (lease requirements).

2

provide transportation services hauling Elvis' cargo (using the freightliner). (ECF No. 31-3, Page.ID.552; ECF No. 33-1, PageID.795.)

On August 3, 2019, the Dojcinovics were transporting some of Elvis' cargo when they were involved in a fatal automobile accident in Calumet City, Illinois. (ECF No. 31-7, PageID.582–584.) Two vehicles, driven by Aqueel Edwards and Armando Bahena, were street racing when the drivers lost control and hit the Dojcinovics' freightliner, causing it to crash into a concrete pillar and catch fire with the Dojcinovics trapped inside—the Dojcinovics were both pronounced dead at the scene. (*Id.* at PageID.583.)

At the time of the accident, there were three relevant active insurance policies. The Dojcinovics insured their personal vehicles with Citizens Insurance Company. (ECF No. 32-2, PageID.634.) Dark & Z carried a "non-trucking" or bobtail insurance policy with Great American Assurance Company.[2] (ECF No. 11, PageID.86.) And Elvis carried an automobile insurance policy with ACE. (ECF 31-1, PageID.485.)

Following the accident, Plaintiffs filed multiple suits. In June 2020, Plaintiffs sued ACE, Citizens, and Great American in Wayne County Circuit Court seeking Michigan No-Fault Personal Injury Protection benefits. *See* State Court Pleading, *Est. of Dojcinovic v. Citizens Ins. Co.*, No. 20-12134 (E.D. Mich. 2020) (available on that docket at ECF No. 1-1). Defendants removed that case to federal court. Ultimately, District Judge Robert H. Cleland found that Citizens was the primary

---

[2] "Generally, a 'bobtail' policy is a policy that insures the tractor and driver of a rig when it is operated without cargo or a trailer." *Besic v. Citizens Ins. Co. of the Midwest*, 800 N.W.2d 93, 95 n.1 (Mich. Ct. App. 2010) (internal citation omitted).

insurer responsible for paying PIP benefits and granted ACE and Great American's motions for summary judgment. *See Est. of Dojcinovic by Dojcinovic v. Citizens Ins. Co. of the Midwest*, 583 F. Supp. 3d 972, 980 (E.D. Mich. 2022).

The following year, Plaintiffs filed this suit in Wayne County Circuit Court. (*See* ECF No. 1-1.) They brought claims for gross negligence against the drivers Bahena and Edwards and a negligent entrustment claim against Zakiyyah Wolfe, the owner of the vehicle driven by Edwards. (*Id.* at PageID.17–19.) Plaintiffs say that "Bahena, through his insurer State Farm Mutual Automobile Insurance, tendered their full [policy] limits of $300,000, by way of interpleader in the Cook County, Illinois Court." (*Id.* at PageID.20.) But since Edwards apparently does not have liability coverage, and Bahena's liability coverage was less than the underinsured policy limits of the ACE, Citizens, and Great American policies, Plaintiffs brought claims for uninsured/underinsured motorist benefits. (*Id.* at PageID.19–22.). Plaintiffs also sought a declaratory judgment from the court that "uninsured and underinsured motorist coverages apply, and . . . to which of the Defendant insurer(s), Citizens, ACE, and/or Great American." (*Id.* at PageID.22 (emphasis removed).) ACE removed the case to this Court based on diversity jurisdiction. (ECF No. 1.) Citizens and Great American were dismissed from this suit by stipulated order. (*See* ECF Nos. 23, 36.) Only ACE and the individual defendants remain.

## II. Legal Standard

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any

4

material fact and the movant is entitled to judgment as a matter of law." Or, stated less formally, ACE is entitled to summary judgment only if no reasonable jury could find in favor of Plaintiffs. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

## III. Analysis

ACE argues that the plain terms of the ACE policy preclude Plaintiffs from recouping uninsured/underinsured motorist benefits here. First, ACE says that uninsured/underinsured motorist coverage under the policy is only available to "covered autos," defined as those automobiles which are "owned" by Elvis. (ECF No. 31, PageID.480.) Because Zeljko Dojcinovic, and not Elvis, legally owned the freightliner, it was not a covered auto, says ACE, so Plaintiffs cannot claim uninsured/underinsured motorist benefits under the ACE policy. (*Id.*) In the alternative, ACE argues that "the Policy excludes lessors as insureds who are required by agreement to hold Elvis harmless." (*Id.*) So, says ACE, even if the freightliner was a covered auto, Plaintiffs would still be precluded from seeking uninsured/underinsured motorist benefits because of a hold harmless provision in the independent contractor agreement between Elvis and Dark & Z. (*Id.*)

Plaintiffs counter that ACE's arguments fail for several reasons. First, they say res judicata or collateral estoppel bars ACE from arguing that the freightliner is not a covered auto since that issue was decided or could have been decided by Judge Cleland in the previous PIP litigation. (ECF No. 37, PageID.816.) Second, they say ACE waived any argument that the freightliner was not covered under the policy by

5

not raising it in the previous litigation. (*Id.*) Third, they say the freightliner is in fact a covered auto under the policy because Elvis was considered an "owner" of the freightliner under Michigan law. (*Id.* at PageID.817.)

For the reasons explained below, the Court finds that ACE is entitled to summary judgment because its arguments are not barred by collateral estoppel, res judicata, or waiver, and the "freightliner" was not a covered auto under the relevant portion of the ACE policy.

### A. Policy Coverage

First, the merits. ACE says that Michigan law applies to the dispute here. (ECF No. 31, PageID.476.) Plaintiffs do not address the conflict of law issue in their response brief, but they do appear to apply Michigan law in their arguments on the proper interpretation of the insurance policy. Accordingly, the Court will follow the parties' lead and apply Michigan law here.

In Michigan, an insurance policy is generally interpreted like any other contract. *Stryker Corp. v. XL Ins. Am.*, 735 F.3d 349, 354 (6th Cir. 2012); *Rory v. Cont'l Ins. Co.*, 703 N.W.2d 23, 26 (Mich. 2005). The meaning of a contract is a question of law. *Wilkie v. Auto–Owners Ins. Co.*, 664 N.W.2d 776, 780 (Mich. 2003). "[A]n insurance contract must be enforced in accordance with its terms." *Henderson v. State Farm Fire & Cas. Co.*, 596 N.W.2d 190, 193 (Mich. 1999). "Terms in an insurance policy must be given their plain meaning and the court cannot create an ambiguity where none exists." *Heniser v. Frankenmuth Mut. Ins. Co.*, 534 N.W.2d 502, 505 (Mich. 1995) (internal quotation marks omitted).

The ACE policy at issue here includes general liability and underinsured/uninsured motorist coverage. (ECF No. 31-2, PageID.497.) The "SCHEDULE OF COVERAGES AND COVERED AUTOS" outlines the coverages included in the policy and notes that they will "apply only to those 'autos' shown as covered autos." (*Id.*) "Autos are shown as covered autos for a particular coverage by the entry of one or more of the symbols from the COVERED AUTO section of the Motor Carrier Coverage Form next to the name of the coverage." (*Id.*) The schedule includes a designated covered auto symbol of "62" for the uninsured/underinsured motorist coverages. (*Id.*) Designation symbol "62" describes "owned autos only," which are defined as "only the 'autos' you own . . . . This includes those 'autos' you acquire ownership of after the policy begins." (*Id.* at PageID.508.) The policy specifies that "the words 'you' and 'your' refer to the Named Insured shown in the Declarations," which is Elvis. (*Id.* at PageID.489, 508.)

| COVERAGES | COVERED AUTOS (Entry of one or more of the symbols from the COVERED AUTO Section of the Motor Carrier Coverage Form shows which autos are covered autos) | LIMIT THE MOST WE WILL PAY FOR ANY ONE ACCIDENT OR LOSS | PREMIUM |
|---|---|---|---|
| LIABILITY | 61 | $1,000,000 | ■ |
| UNINSURED MOTORISTS | 62 | SEE THE ATTACHED ENDORSEMENT(S) AND SCHEDULE OF COVERED AUTOS. | ■ |
| UNDERINSURED MOTORISTS (When not included in Uninsured Motorists) (Not Applicable in New York) | 62 | SEE THE ATTACHED ENDORSEMENT(S) AND SCHEDULE OF COVERED AUTOS. | ■ |
| | | PREMIUM FOR ENDORSEMENTS | ■ |
| | | ESTIMATED TOTAL PREMIUM | ■ |

ITEM TWO - SCHEDULE OF COVERAGES AND COVERED AUTOS
This policy provides only those coverages where a charge is shown in the premium column below. Each of these coverages will apply only to those "autos" shown as covered "autos." "Autos" are shown as covered "autos" for a particular coverage by the entry of one or more of the symbols from the COVERED AUTO Section of the Motor Carrier Coverage Form next to the name of the coverage.

| Symbol | Description Of Covered Auto Designation Symbols | |
|---|---|---|
| 61 | Any "Auto" | |
| 62 | Owned "Autos" Only | Only the "autos" you own (and for Covered Autos Liability Coverage any "trailers" you don't own while connected to a power unit you own). This includes those "autos" you acquire ownership of after the policy begins. |
| 68 | Hired "Autos" Only | Only those "autos" you lease, hire, rent or borrow. This does not include any "private passenger type" "auto" you lease, hire, rent or borrow from any member of your household, any of your "employees", partners (if you are a partnership), members (if you are a limited liability company), or agents or members of their households. |

(*Id.* at PageID.497, 508.)

Accordingly, uninsured/underinsured motorist coverage under the policy is only available to autos that are owned by the named insured, Elvis.

The policy does not define the term "own," but the plain and ordinary meaning of undefined contract terms "may be determined by consulting dictionaries." *McGrath v. Allstate Ins. Co.*, 802 N.W.2d 619, 622 (Mich. Ct. App. 2010) (internal citation omitted). The Oxford English Dictionary, considered to be "one of the most authoritative [dictionaries] on the English language," *see Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 569 (2012), defines the word "ownership" as "[t]he fact or state of being an owner; legal right of possession; property, proprietorship, dominion" and the term "owner" as "[o]ne who owns or holds something as his own; a proprietor; one who has the rightful claim or title to a thing (though he may not be in possession)," *Ownership* and *Owned*, Oxford English Dictionary (2d ed. 1989). Black's Law Dictionary defines the term "own" as "[t]o rightfully have or possess as property; to have legal title to." *Own*, Black's Law Dictionary (11th ed. 2019).

Here, as noted earlier, the freightliner that the Dojcinovics were driving at the time of the accident was leased to Elvis by Dark & Z. And while the Dojcinovics were transporting Elvis' cargo at the time of the accident, it is undisputed that Zeljko

8

Dojcinovic, not Elvis, held legal title to the freightliner. (*See* ECF No. 33-1, PageID.792.) Therefore, under the plain meaning of the contract terms, the named insured (Elvis) did not "own" the autos. It follows that the freightliner was not a covered auto. And since policy coverage only applies to designated covered autos, Plaintiffs are not entitled to uninsured/underinsured motorist benefits here.

Resisting this conclusion, Plaintiffs argue that an auto can have more than one owner and that, because Elvis leased the freightliner for more than 30 days, it became an owner of the freightliner "by operation of Michigan law." (ECF No. 37, PageID.818.) Plaintiffs rely on a provision of the Michigan No-Fault Act that defines the term "owner," as used in the statute, to include "[a] person renting a motor vehicle or having the use of a motor vehicle, under a lease or otherwise, for a period that is greater than 30 days." *See* Mich. Comp. Laws § 500.3101(l).

But Plaintiffs' reliance on the no-fault act's definition of "owner" is misplaced. For one, the Michigan Supreme Court has made clear that because uninsured/underinsured motorist coverage "is not compulsory coverage mandated by the no-fault act . . . the rights and limitations of such coverage are purely contractual and are construed without reference to the no-fault act." *Rory*, 703 N.W.2d at 29. And for another, the no-fault act's definition of the word "owner" pertains to the use of the word in the statute; it does not purport to provide a definition that universally attaches to the word "owner" in every automobile insurance contract.

The word "own," as used in the ACE policy, is unambiguous—it refers only to those autos which the named insured has legal title or claim to and the legal right to

9

possess. *See RPM Freight Sys., LLC v. Wesco Ins. Co.*, No. 21-11882, 2023 WL 2021687, at *5 (E.D. Mich. Feb. 15, 2023) ("A fundamental tenet of [Michigan] jurisprudence is that unambiguous contracts are not open to judicial construction and must be enforced as written." (citing *Rory*, 703 N.W.2d at 30) (internal quotations omitted)). And the phrase "autos you own" plainly does not include leased autos because to own property—that is, to have legal title or claim to property—is distinct from leasing or contracting for the temporary use of property. *See e.g., Lease*, Oxford English Dictionary (2d ed. 1989) ("To grant the possession or use of (lands, etc.) by a lease; to let out").

Importantly, this interpretation is also supported by the existence of the covered auto symbol "68," which is defined in the ACE policy to include autos that Elvis might "lease, hire, rent, or borrow." (ECF 31-2, PageID.508.) The ACE policy thus has a specific symbol that could have been added to provide uninsured/underinsured motorist coverage to autos that Elvis leased. But that symbol was not included in the uninsured/underinsured motorist coverage provisions of the policy. And the Court cannot now write that symbol into the policy by interpreting the phrase "autos you own" to include leased autos—to do so would effectively rewrite a portion of the contract. *See e.g., Citizens Ins. Co. of Am. v. Am. Mfrs. Mut. Ins. Co.*, No. 194307, 1998 WL 1991200, at *3 (Mich. Ct. App. June 19, 1998) (finding that leased auto was not "owned auto" under terms of insurance policy and noting that the "policy explicitly provides a distinction between an owner and a lessee of an auto for purposes of determining coverage"); *see also TMW Enterprises,*

10

*Inc. v. Fed. Ins. Co.*, 619 F.3d 574, 578 (6th Cir. 2010) ("interpreting an insurance policy to give a reasonable meaning to all provisions is preferable to interpreting the policy in a way that creates surplusage or leaves a portion of the policy useless or inexplicable" (quoting *Michigan Twp. Participating Plan v. Pavolich*, 591 N.W.2d 325, 330 (1998))).

Next, Plaintiffs say that because Elvis leased the freightliner for over six months, the freightliner contributed to the premiums paid by Elvis for uninsured/underinsured motorist coverage and so it ought to be consider a covered auto. Plaintiffs' argument seemingly refers to a provision in the contract that states:

> The estimated premium for this Coverage Form is based on the exposure you told us you would have when this policy began. You shall maintain a record of the number of autos you own including autos you lease or borrow for a period of 6 months or longer. You shall send us copies of such reports at the end of the policy period and at such time during the policy period as we may direct.

(ECF No. 31-2, PageID.506.)

True, the ACE policy does not identify specific vehicles for coverage but calculates a final premium based on the "average number of autos." (*Id.*) And, under the above referenced provision, Elvis was required to maintain a record of, and submit to ACE, the vehicles it owns, including the vehicles it leases or borrows for a period of six months or longer. This information could be relevant to ACE for several reasons, including, presumably, by impacting the risk assessment and premiums that ACE charges.

But this provision does not purport to define "covered autos" in the uninsured/underinsured provision as including vehicles leased or borrowed by Elvis

11

for a period of more than six months nor does it prove that the freightliner was included in the calculation of Elvis' uninsured/underinsured motorist premiums.

First, as the Court explained above, the policy includes a specific and unambiguous definition for the relevant covered autos; a provision that says nothing about autos leased or borrowed by Elvis for more than six months being included as owned autos. *See generally*, *TOMRA of N. Am., Inc. v. Dep't of Treasury*, 952 N.W.2d 384, 350 (Mich. 2020) ("[W]here a statute contains a general provision and a specific provision, the specific provision controls." (internal citation and quotations omitted)). Moreover, it may be that information on the number of leased/borrowed autos would be relevant to ACE's calculation of the policy premiums for the liability coverage portion of the policy, which covers "all-autos." Importantly, Plaintiffs provide no evidence substantiating their speculative assertion that ACE considered leased autos, specifically the freightliner, when calculating the uninsured/underinsured motorist premium it charged Elvis. And the Court cannot make such an inference based solely on the fact that Elvis was required to report to ACE the number of autos it leased or borrowed for a period of more than six months.

In sum, the ACE policy limits uninsured/underinsured motorist coverage to covered autos, defined as autos owned by the named insured, Elvis. But Zeljko Dojcinovic, not Elvis, had full legal title and claim to the freightliner at issue here. Accordingly, the Court finds that the freightliner was not a covered auto under the

12

relevant provision of the policy and Plaintiffs are therefore not entitled to collect uninsured/underinsured motorist benefits from ACE.[3]

## B. Preclusion and Waiver

Next, the Court will address whether ACE is precluded from arguing that the freightliner is not a covered auto.

As an initial matter, the Court notes that Plaintiffs' arguments that res judicata, collateral estoppel, or waiver bar the argument are underdeveloped and difficult to follow. And "issues which are 'adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'" *Kennedy v. Comm'r of Soc. Sec.*, 87 Fed. App'x 464, 466 (6th Cir. 2003) (quoting *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996)). "It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (internal citations omitted).

But even putting aside waiver—Plaintiffs' arguments fail on the merits.

---

[3] ACE contends that coverage is also unavailable because its policy excludes lessors as insureds who are required to hold Elvis harmless. (ECF No. 31, PageID.480.) The relevant provision defines "who is an insured?" as follows: "The lessor of a covered 'auto' that is not a 'trailer' or any 'employee', agent, or driver of the lessor while the 'auto' is leased to you under a written agreement if the written agreement between the lessor and you does not require the lessor to hold you harmless and then only when the leased 'auto' is used in your business as a 'motor carrier' for hire." (ECF No. 31-2, PageID.510.) But, says ACE, the Independent Contractor Agreement between Dark and Elvis contains a Hold Harmless Provision in which Dark agrees to hold Elvis harmless. (ECF No. 31, PageID.481.) Plaintiffs do not respond to this argument other than to conclusively assert they are insureds under the relevant provision and a separate provision defining insureds. So this would also support the grant of summary judgment.

13

Neither res judicata (claim preclusion) nor collateral estoppel (issue preclusion) preclude ACE from arguing that its insurance policy does not provide uninsured/underinsured motorist benefits because the freightliner was not a covered auto.

"Collateral estoppel precludes relitigation of an issue in a subsequent, different cause of action between the same parties when the prior proceeding culminated in a valid final judgment and the issue was actually and necessarily determined in that prior proceeding." *Radwan v. Ameriprise Ins. Co.*, 933 N.W.2d 385, 388 (Mich. Ct. App. 2018). Under Michigan law three elements generally must be satisfied for issue preclusion to apply: "(1) 'a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment'; (2) 'the same parties must have had a full [and fair] opportunity to litigate the issue'; and (3) 'there must be mutuality of estoppel.'" *Watermark Senior Living Ret. Communities, Inc. v. Morrison Mgmt. Specialists, Inc.*, 905 F.3d 421, 426 (6th Cir. 2018) (internal citations omitted).

The issue of whether the freightliner was a covered auto under the uninsured/underinsured motorist provision of the policy was not actually litigated in the prior proceeding. In the earlier litigation, Judge Cleland considered whether ACE was responsible to pay PIP benefits to Plaintiffs under the ACE policy. *Est. of Dojcinovic*, 583 F. Supp. 3d at 974 ("Plaintiffs brought this action against three different auto insurers seeking Personal Injury Protection ('PIP') benefits under Michigan's No-Fault Act. All three insurers have moved separately for summary

14

judgment arguing, for various reasons, that they are not responsible for providing PIP benefits."). Judge Cleland ultimately found that ACE's "policy's terms did not contemplate providing PIP coverage on the truck while it operated in states where such coverage was not required." *Id.* In so holding, Judge Cleland noted that "ACE does not dispute that it provided liability coverage [for the freightliner] at the time of the crash." *Id.* at 978. Additionally, he explained that the "schedule of fees in the policy clearly indicates there was an opportunity for Elvis to opt for the inclusion of 'Personal Injury Protection' benefits, yet this schedule shows that Elvis did not purchase such coverage and instead chose only to purchase liability coverage and underinsured/uninsured motorist coverage." *Id.*

But the two relevant facts noted in Judge Cleland's opinion—that the ACE policy provided liability coverage for the freightliner and included uninsured/underinsured motorist coverage—are entirely distinct from ACE's argument that the freightliner was not a covered auto entitled to uninsured/underinsured motorist benefits under the ACE policy. This is because the ACE policy provides different definitions for covered autos under the liability provision and under the uninsured/underinsured motorist benefits provisions. (*See* ECF No. 31-2, PageID.497, 508.) Liability coverage under the policy applies to "all-autos," while the uninsured/underinsured motorist coverage is limited to only "owned autos," defined by the policy as those autos that are owned by the named insured, Elvis. (*Id.*)

15

So while ACE conceded liability coverage applies to the freightliner in the previous litigation, it did not concede that uninsured/underinsured motorist coverage applied to the freightliner, and Judge Cleland never considered or decided that issue. Accordingly, issue preclusion does not bar ACE's argument here.

Plaintiffs' claim preclusion argument does not fare any better. "The doctrine of res judicata is employed to prevent multiple suits litigating the same cause of action." *Adair v. State*, 680 N.W.2d 386 (Mich. 2004). Under Michigan law, "the doctrine bars a second, subsequent action when (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first." *Id.* Michigan thus "take[s] a broad approach to the doctrine of res judicata, holding that it bars not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." *Id.*; *see also Pierson Sand & Gravel, Inc. v. Keeler Brass Co.*, 596 N.W.2d 153, 157 (Mich. 1999) ("Both Michigan and the federal system have adopted a broad approach to the application of res judicata.").

Plaintiffs say that claim preclusion applies to ACE's argument because "the first action was decided on the merits and involved the same parties, [and] the issue of whether the insurance policy applies to the Freightliner at issue could certainly have been resolved in the first matter." (ECF No. 37, PageID.817.) But the issue here is not whether the insurance policy generally applies to the freightliner. It is whether specific provisions of the insurance policy, the uninsured/underinsured motorist

16

benefits provisions, apply—a question which turns on whether the freightliner is a covered auto as defined under those specific provisions. This is entirely distinct from the PIP issues raised by Plaintiffs and decided in the previous litigation—for which *ACE* was granted summary disposition. Indeed, ACE had no reason to bring forth such a defense in the previous litigation because it would have been largely irrelevant to the issue of whether the policy provided PIP coverage to the freightliner. And while the claim in the previous litigation arose from the same accident and dealt with the same insurance policy, the operative facts are different in this case because a different provision of the contract is at issue.

In any event, Plaintiffs chose not to bring claims for uninsured/underinsured motorist benefits in the previous litigation. They cannot now argue that ACE is barred from asserting a defense that it had no reason to raise in the previous litigation. *Cf., Larry v. Powerski,* 148 F. Supp. 3d 584, 597 (E.D. Mich. 2015) ("Under the doctrine of claim preclusion as it has been applied by Michigan courts . . . 'a second bite at the apple' is precluded, because the present claims are ones 'arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not' in the previous lawsuit" (citing *Young v. Twp. of Green Oak*, 471 F.3d 674, 682 (6th Cir. 2006))); *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.,* 140 S. Ct. 1589, 1595 (2020*)* ("[I]n suits involving successive claims against the same defendant, courts often 'assum[e] that the defendant may raise defenses in the second action that were not raised in the first, even though they were equally available and relevant in both actions.'" (citing Wright & Miller § 4414)). So the Court

17

finds that res judicata does not bar ACE from arguing that Plaintiffs are not entitled to uninsured or underinsured motorist benefits under the policy because the freightliner was not a covered auto.⁴

Finally, for similar reasons, the Court finds that ACE did not waive its argument by virtue of not raising it in the previous litigation. *United States v. Olano*, 507 U.S. 725, 733 (1993) ("[W]aiver is the 'intentional relinquishment or abandonment of a known right.'" (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938))); *see also Husel v. Trinity Health Corp.*, 832 F. App'x 996, 997 (6th Cir. 2021) (same).

In sum, neither issue preclusion, claim preclusion, nor waiver apply to bar ACE's argument that the freightliner is not a covered auto under the uninsured/underinsured motorist provisions of the ACE policy.

## IV. Conclusion

What happened to the Plaintiffs' loved ones is tragic. Unfortunately, the ACE insurance policy does not provide them the uninsured/underinsured coverage being sought.

For the reasons stated, ACE's motion for summary judgment is GRANTED.

SO ORDERED.

Dated: September 21, 2023            s/Laurie J. Michelson
                                     Laurie J. Michelson
                                     United States District Judge

---

⁴ The Court will not consider whether Plaintiffs' claims are barred by claim preclusion because ACE has not raised that issue.

18